# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WENDY EVANS | § | |
| | § | |
| V. | § | A-10-CA–518-LY |
| | § | (A-08-CR-467(1)-LY) |
| UNITED STATES OF AMERICA | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are the Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (Clerk's Doc. No. 45); the Government's Response to Movant's Motion to Vacate, Set Aside or Correct Sentence (Clerk's Doc. No. 51); Movant's Reply (Clerk's Doc. No. 52); and the Government's Response to Movant's Reply (Clerk's Doc. No. 53). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

## I. GENERAL BACKGROUND

On December 16, 2008, Movant Wendy Evans was charged in a ten-count indictment for mail fraud, in violation of 18 U.S.C. § 1341. On March 18, 2009, Evans entered into a plea agreement with the United States: she agreed to enter a plea of guilty to counts eight, nine, and ten of the indictment in exchange for the Government dismissing counts one through seven of the indictment and not pursuing other Title 18 offenses against Evans. On March 20, 2009, Evans formally entered a plea of guilty to counts eight, nine, and ten of the indictment at her re-arraignment

pursuant to her plea agreement. On July 7, 2009, the District Court sentenced Evans to a 57-month term of imprisonment, followed by a three-year term of supervised release, and ordered Evans to pay a $300 mandatory assessment fee in addition to restitution in the amount of $824,142.67. In compliance with the terms of the plea agreement, Evans did not file a direct appeal. On July 12, 2010, Evans filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

Evans's motion contains three categories of allegations: (1) her counsel provided ineffective assistance; (2) her guilty plea was involuntary; and (3) the restitution imposed violated the ex post facto clause. The latter two arguments are single-issue points, but the first has many subparts.[1] Those sub-issues assert that Evans' counsel was ineffective by: (a) failing to argue for a lower restitution amount; (b) failing to argue that Evans deserved only a minor role adjustment; (c) failing to argue that Evans suffered from a diminished mental capacity; (d) failing to object to a guidelines enhancement for "use of sophisticated means" or "abuse of a position of trust"; (e) failing to assert that the Government breached the plea agreement; (f) failing to inform Evans that she could withdraw her plea; (g) generally failing to investigate, research, and properly advise Evans regarding the consequences of her plea; and (h) failing to move for a downward departure for acceptance of responsibility.

## II. STANDARD OF REVIEW

Section 2255 provides four main grounds upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence violated the Constitution or laws of the United States;

---

[1] Evans's original motion to vacate lists several general allegations of ineffectiveness. The memorandum filed in support of the motion contains far more detail. The issues identified in the text are based on the Court's interpretation of both the motion and the memorandum in support, and on a liberal reading of these pleadings.

(2) the district court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). However, a defendant's claim of ineffective assistance of counsel does give rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that her counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To satisfy the prejudice prong, a petitioner must demonstrate "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing fundamentally unfair or unreliable." *Crane*, 178 F.3d at 312–13 (internal quotation omitted).

This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). When a petitioner argues that her guilty plea was not voluntary due to the ineffective assistance of counsel, she must show that her counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Id.* at 56. Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for her counsel's alleged ineffectiveness, she "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Armstead*, 37 F.3d at 206.

### III. DISCUSSION

**A.    Claims of Ineffective Assistance of Counsel**

As noted earlier, Evans contends that her counsel was ineffective in eight ways: (a) failing to argue for a lower restitution amount; (b) failing to argue that Evans deserved only a minor role adjustment; (c) failing to argue that Evans suffered from a diminished mental capacity; (d) failing to object to a guidelines enhancement for "use of sophisticated means" or "abuse of a position of

4

trust"; (e) failing to assert that the Government breached the plea agreement; (f) failing to inform Evans that she could withdraw her plea; (g) generally failing to investigate, research, and properly advise Evans regarding the consequences of her plea; and (h) failing to move for a downward departure for acceptance of responsibility. The Court reviews each of these arguments below.

### 1. Failure to argue for a lower restitution amount

Evans first argues that her attorney rendered ineffective assistance of counsel when he failed to investigate, research, and sufficiently argue her lack of responsibility for the total amount of restitution to which the District Court sentenced her. Specifically, Evans argues that she was not responsible for the total loss of $824,142.67; instead, she was only responsible for the loss related to the three counts of mail fraud she pled guilty to. Evans argues that the loss related to those three counts capped her responsibility at $1,052.72. She claims that she gave her counsel boxes of documents demonstrating that her relevant conduct should be limited to those three charges. Evans argues that her attorney provided inadequate assistance by allowing her to plead guilty to restitution in the amount of $824,142.67, when the three counts for which she pled guilty did not directly cause that loss. Evans disputes the $824,142.67 because she argues that she put her own money into her business account, which was not properly accounted for in the loss. She also claims her employees stole money from her accounts and thus she was not responsible for that loss either.

In fact, Evans's attorney *did* object to the relevant conduct contained in the PSI and the restitution that flowed from that, and argued vigorously that Evans should not be held responsible for $824,142.67 in restitution. A significant portion of the sentencing hearing was devoted to just this issue. Both the Government and Evans questioned FBI Agent John Hall at length regarding how he reached the figure contained in the PSI, and Evans's counsel plainly argued that a lower amount

5

of restitution was appropriate.² The argument was focused on Evans's alleged lack of intent to defraud anyone in this amount. She did not dispute that the $824,000 figure accurately reflected the difference between the insurance proceeds received by Evans's company, and the amounts, less her fee, forwarded on to her clients. Rather, Evans contended that there were non-criminal bases for the failure to pay the full amount, ranging from bad management to internal misdeeds by employees to a failing business. Ultimately, Judge Yeakel rejected those arguments, and ruled that the full requested amount was appropriate. An attorney's responsibility is only to present the argument; he has no control over the judge's ruling on the argument, and he thus cannot be considered ineffective merely because an argument is rejected. *E.g.*, *Alamia v. United States*, No. 8:06-cv-2322, 2007 WL 1747184, at *3 (M.D. Fla. June 18, 2007) (unpublished) ("A lawyer is not ineffective because a judge rules against his argument.").

With regard to the "boxes of documents" Evans contends demonstrate her lack of responsibility for the full restitution amount, Evans fails to identify what they actually contained and why they would show that she was not responsible for the $824,142.67 loss. Because Evans's attorney adequately objected to the restitution figure, he did not render ineffective assistance of counsel with respect to restitution.

---

²Evans correctly asserts that restitution ordered in criminal cases is generally tied to the losses caused by the specific offense of conviction. *Hughey v. United States*, 495 U.S. 411, 412–13(1990); *United States v. Maturin*, 488 F.3d 657, 660–61 (5th Cir. 2007); *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007). However, the Fifth Circuit has also held that "where a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme." *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (internal citation omitted). This case involved a wire fraud scheme, and thus it was appropriate for the Court to look to the loss caused by the entire scheme in fashioning its restitution order.

### 2. Failure to argue that Evans performed a minor role

Evans next argues that her counsel provided ineffective assistance when he failed to argue that she had a minor role in the scheme to defraud. Although her attorney argued that she was a minor participant, Evans claims that he should have called witnesses to testify about her minor role. Evans has consistently attempted to deflect responsibility for her actions onto her employees. In particular, her attorney suggested that one of the employees, Toby Nichols, used her signature stamp to sign a paycheck worth more than his salary. Sentencing at 21–26. At sentencing, her attorney argued that she was frequently absent and her employees had a stamp of her signature, so they could have caused the loss. Evans speculates that had her counsel presented witnesses, she could have established that her employees stole the clients' insurance checks.

The record does not support this argument. Evans owned the business, and there was strong evidence that the scheme was devised by her and no one else. Further, "complaints of uncalled witnesses are not favored in federal habeas review because presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007). Evans failed to establish what information these witnesses would have provided, how their testimony would have limited her responsibility, or how the evidence implicating others would have outweighed her role in creating the scheme to defraud. Accordingly, Evans has failed to demonstrate that her lawyer provided inadequate assistance by failing to call witnesses to demonstrate that she had a minor role.

### 3. Failure to argue that Evans suffered from a diminished mental capacity

Evans argues that her attorney failed to assert that she suffered from a diminished mental capacity. Evans states that she was suffering from Post Traumatic Stress Disorder after the death

of her partner. She contends that her PTSD forced her into isolation and caused her to neglect her business. She alleges that her employees may have seized upon her weakness and stole money for themselves.

In fact, Evans's counsel did make this argument, asserting that Evan's PTSD mitigated her conduct. Sentencing at 17–19. However, diminished capacity ordinarily is not considered a mitigating factor under the Guidelines. "Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines." *United States v. Keller*, 947 F.2d 739, 741 (5th Cir. 1991). Evans has not made a showing that a downward departure based on her diminished capacity was warranted. *United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992) (finding no error for failure to downward depart from the guidelines based on the defendant's claim of significantly reduced mental capacity where the mental condition did not contribute to commission of the crime). And Evans has not established that her mental condition contributed to the offenses she committed. She does not argue that she committed the crimes because of her PTSD—she argues that her diminished mental capacity allowed her employees to commit the crimes. Because she pled guilty to the charges, this argument lacks merit.

**4.   Failure to object to enhancement for using sophisticated means or abusing a position of trust**

Evans also contends that her attorney was ineffective in not objecting to the enhancement of her sentence based on the alleged use of sophisticated means and abuse of a position of trust. These are not actually two different enhancements; instead, the PSR provided an enhancement for abusing a position of trust or use of a special skill, supported by Evans's contract calling for the victims to give Evans a signature stamp and authority to negotiate the clients' insurance reimbursement checks. In her motion, Evans argues that the Court enhanced her sentence for using the signature stamps as

"sophisticated means," but that is not accurate. The Court did not find the use of stamps a "special skill." Rather, the Court relied on the check negotiation authority, implemented with the stamps, as evidence that Evans abused a position of trust. Sentencing at 95. Though Evans disagrees with Judge Yeakel's finding signatory power sufficient to justify an enhancement for abusing her victims' trust, she cannot point to any evidence or law to support her claim. Her lawyer objected to the enhancement in the PSR and again during sentencing, but the Court determined that the enhancement was justified. *Id.* at 92–95. Accordingly, her attorney did not provide inadequate assistance on this point.

### 5. Failure to assert that the Government breached the plea agreement

Evans asserts that although the Government agreed not to oppose a two-level reduction for acceptance of responsibility, the Assistant United States Attorney breached this agreement by arguing against giving her this reduction at sentencing. Evans argues that her counsel was ineffective for failing to recognize this breach and by failing to object to it.

The plea agreement prohibited the prosecutor from arguing against a downward adjustment for acceptance of responsibility. The relevant language states: "The Government will not oppose the award of a two-level downward adjustment for acceptance of responsibility." Plea Agreement (Doc. No. 19) at ¶ II.A.1. Of course, this agreement is not binding on the Court, and Judge Yeakel was free to make his own determination on the issue. But the Government's obligation on this point was not to oppose the award of the reduction. It would appear that the AUSA breached this agreement at the sentencing hearing when she argued against awarding Evans the reduction.[3]

---

[3]The statements made by the AUSA on this issue include the following:

I think the difficult position that [defense counsel has] put the probation officer in

9

Assuming that there was a breach of the agreement, and that Evans's counsel was ineffective in not objecting to the breach, Evans must still demonstrate prejudice resulting from that deficient performance. From the transcript of the sentencing proceedings, it appears quite clear that the District Court was inclined not to allow the reduction regardless of the prosecutor's arguments. Further, the District Court gave Evans the opportunity to fully accept responsibility during the sentencing hearing, and she consistently failed to take advantage of those opportunities. *See id.* at 103 (finding that Evans has "not truthfully admitted any additional relevant conduct . . . before me today").

In a similar case, the Fifth Circuit denied relief to a defendant who failed to object to the Government breaching its plea agreement by opposing a downward departure for acceptance of responsibility. *United States v. Puckett*, 505 F.3d 377 (5th Cir. 2007), *aff'd*, *Puckett v. United States*, 129 S. Ct. 1423 (2009). In *Puckett*, the Government stipulated that Puckett accepted responsibility and qualified for a downward departure. 505 F.3d at 381. However, the Government argued against

---

and the Government is that he's basically saying that she's not criminally responsible for anything except what is contained in Counts 8, 9, and 10. And if that is what he was saying, he's saying that she had no intent to steal money. Then she has not accepted responsibility for this, and I think that the probation office has correctly taken those points away from her based upon his objections.

\* \* \*

But she is saying she is not responsible, criminally responsible for stealing money, an $800,000 figure. And if that is what she is saying, she has not accepted the responsibility for the relevant conduct in this case.

\* \* \*

I hope the Court understands the position that I feel like I'm in. But she has not accepted responsibility for her relevant conduct in this case.

Sentencing at 74–76.

the downward departure during sentencing, and Puckett failed to object at the sentencing; therefore, he forfeited the error. *Id.* at 383. Because he forfeited the error, he had the burden of persuasion to demonstrate reversible plain error. *Id.* The Fifth Circuit held that Puckett failed to demonstrate that the error affected a substantial right because he "made no showing that, absent the government's recommendation, the district court would have . . . granted the reduction for acceptance of responsibility." *Id.* at 386.

After the Fifth Circuit affirmed his sentence, the Supreme Court granted certiorari and affirmed. Puckett then filed a § 2255 motion in the Northern District of Texas, claiming that his attorney provided inadequate assistance for failing to object to the Government's breach, thereby forfeiting the error. *United States v. Puckett*, No. 3-CV-721, 2010 WL 5186628, at *3 (N.D. Tex. Nov. 10, 2010). But the court held that "[e]ven if counsel was deficient in failing to object to the government's breach," Puckett cannot show prejudice. *Id.* at *4. Although the sentencing court may have sustained the objection, "there is no reason to believe that [Puckett] would have received a lesser sentence" if the Government fulfilled its obligations. *Id.* From the trial transcript, the sentencing court appeared pre-disposed to deny a downward departure, even without the Government breaching its agreement. *Id.*

Evans similarly fails to show the prejudicial effect of her attorney failing to object to the Government's breach. Not only was the breach not as drastic—Evans's agreement did not call for the Government to advocate for the departure, just not to oppose it—but she also failed to accept responsibility during her sentencing hearing. It is beyond the pale to argue that if the Government took no position on the adjustment the District Court would have awarded it despite the position that Evans took at the sentencing hearing on her lack of criminal intent with regard to the majority of the

11

$824,000 at issue. Judge Yeakel stated that he denied the reduction because Evans "has, at the worst, falsely denied . . . the conduct . . . or at best, has frivolously contested it." Sentencing at 104. The District court did not base its decision against awarding the departure on the Government's argument—it based its decision on Evans not taking responsibility for the relevant conduct during the sentencing hearing.

Thus, even if the Government breached its agreement, and Evans's counsel was deficient for not calling that breach to the attention of the Court, Evans has failed to demonstrate that her counsel's conduct prejudicially affected her. Without a showing of prejudice, Evans cannot prevail on this claim of ineffective assistance of counsel.

### 6. Failure to inform Evans that she could withdraw her plea

Evans next argues that her counsel was ineffective when he failed to tell her that she could withdraw her guilty plea. Evans argues that once she realized that the District Court could and likely would order her to pay over $800,000 in restitution, she wanted to withdraw her guilty plea but her lawyer did not tell her that was possible.

The record, however, refutes her position that she did not know that she could withdraw her plea. She had several opportunities to change her mind and her plea. She told Judge Pitman and Judge Yeakel that she knowingly, willingly, and voluntarily pled guilty. Her filings contend that "a few days before sentencing, my attorney . . . remarked to me . . . that [the prosecutor] was still intending to hold me completely responsible for the total loss anyway in addition to 3 counts of mail fraud." Memorandum (Doc. No. 45) at 2. At the commencement of the sentencing hearing, however, the following colloquy took place:

> THE COURT: Ms. Evans, you have pleaded guilty to the Counts 8 through 10 of an indictment charging you with mail fraud, each of which count being a Class C Felony; is that correct?
>
> MS. EVANS: Yes, sir.
>
> THE COURT: Pleaded guilty before the United States Magistrate Judge Robert Pitman on March the 20th, 2009. Do you recall that?
>
> MS. EVANS: Yes, sir.
>
> THE COURT: Is it your intention to continue with your plea of guilty at this time?
>
> MS. EVANS: Yes, sir.
>
> THE COURT: Is there a plea agreement in this case?
>
> MS. FERNALD: There is, Your Honor.
>
> THE COURT: Ms. Evans, do you reaffirm the statements that you have made in your plea agreement and the statements that were made in a factual basis that was presented to Judge Pitman at the time you made your plea of guilty?
>
> MS. EVANS: Yes, sir.

Sentencing at 3-4. Thus, notwithstanding having been told just a few days earlier that the government would be seeking to hold her responsible for the full $824,000 of restitution, Evans nevertheless reaffirmed her intention to continue with her guilty plea. Moreover, when it became crystal clear later in that hearing that Judge Yeakel would impose this total loss as part of the restitution order, she still continued with her plea, and made no statement that she wished to withdraw from that plea. Further, throughout the hearing Evans conferred with her attorney about whether she would accept responsibility for that entire loss. *E.g.*, *id.* at 81–85. Eventually, after conferring with her attorney, Evans withdrew her objection to the relevant conduct total in the PSR. *Id.* at 90–91. At this point, she was no longer contesting the amount of the relevant conduct, so she cannot claim that although she told the District Court that she accepted the full amount of the loss,

13

she secretly did not accept the amount and wanted to withdraw her plea. Thus, even if the Court assumes that Evans was never told that she could withdraw her plea, and that counsel's performance was deficient in this regard, there is no evidence of prejudice, and it is clear from the record that Evans actually had the opportunity to withdraw from her plea, or to indicate a desire to do so, and affirmatively chose not to. Thus, she has failed to demonstrate any ineffective assistance on this point as well.

> 7. **Failure to investigate, research, and properly advise Evans regarding the consequences of her plea**

Permeating Evans's memorandum is a general argument that her counsel failed to properly research and advise her regarding the various legal questions raised by her guilty plea, along with the restitution and acceptance of responsibility issues that flowed from that plea. For example, Evans complains about "my attorney's thoughtless indifference to researching case law with regards to the plea." Memorandum (Doc. No. 45) at 10. She contends that

> if my defense had properly researched 'guilty pleas, relevant conduct, conviction, and *Hughey*' in the Supreme Court Bench decisions, and practically everywhere else, he would have known about the case law I have previously quoted.

*Id.* This complaint is founded on the incorrect assumption that *Hughey* and the other cases Evans cites support her view that the restitution imposed on her was legally improper. It is clear from the sentencing transcript that the problem was not her attorney's lack of understanding of the relevant law, but rather was Evans' refusal to accept responsibility for the injuries she caused to her many clients. It is plain that Evans understood what was happening but simply disagreed that she should be held responsible for her actions. This obviously posed significant challenges to her attorney, who consulted with her on several occasions during the hearing trying to persuade her to make a clear statement accepting responsibility for her conduct. Despite being given the opportunity to do so, she

14

steadfastly refused. In short, Evans misconstrues the precedents she references on this point, and then wrongly concludes that her lawyer was deficient for not obtaining an outcome not supported by the relevant law. This claim fails.

### 8. Failure to move for a downward departure for acceptance of responsibility

Finally, Evans contends that her lawyer was ineffective for not moving for a downward departure for acceptance of responsibility. It is not clear that this is a separate argument from those already addressed above. The basis for the Court's believing it may be a claim is found in "Ground One" of her motion to vacate (Doc. No. 40), which reads, in part, "Failure to move for Downward Departure, for Acceptance of Responsibility, Safety Valve, or Call Witnesses."[4]

This argument fails for several reasons. First, and foremost, there is no need to move for a downward departure for acceptance of responsibility. Acceptance of responsibility is not addressed as a "departure," but rather is an adjustment to the offense level and the Court considers the issue automatically under the Guidelines. Thus, Evans's counsel could not have been deficient for not moving for a departure on this issue. Moreover, as already addressed in detail above, Evans's attorney spent a great portion of the sentencing hearing advocating for an adjustment for acceptance of responsibility. What prevented Evans from receiving that adjustment was wholly unrelated to her attorney's performance, but rather was due to, in Judge Yeakel's words, the fact that Evans "falsely denied . . . the conduct . . . or at best, has frivolously contested it." Thus, to the extent this is a separate issue raised by Evans's motion to vacate, the issue lacks merit.

---

[4] As noted by the Government in its response, the safety valve provision has no applicability to this case, as it only applies to drug cases, and this is a wire fraud prosecution. *See* 18 U.S.C. § 3553(f). The issue related to the "calling of witnesses" is apparently a reference to the issue already addressed in the text regarding Evans's role in the offense.

**B.     Was Evans's plea involuntary?**

Relatedly, Evans argues that the government improperly induced her plea. Evans argues that her guilty plea was improperly induced and involuntary as she did not understand the nature of the charge or sentencing consequences. Petition at 5. The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion, (2) a full understanding of the charges, and (3) a realistic appreciation of the consequences of the plea. *United States v. Garcia*, 983 F.2d 625, 627–28 (5th Cir. 1993). Cognizant of the requirements for a plea to be voluntary, both Judge Pitman and Judge Yeakel asked Evans about whether she made her plea knowingly and voluntarily. At her re-arraignment before Judge Pitman, she declared that she had received ample time to consult with her attorney about the pending charges and any defenses she could raise against them. Re-arraignment at 4–5. Further, she stated that she was not suffering from a mental or physical defect that would prevent her from comprehending the consequences of her actions. *Id.* at 5. Judge Pitman further advised her of the penalties that could be imposed for her offense, including restitution. *Id.* at 8, 12. He also emphasized that any estimates Evans may have received from her attorney about what might happen at sentencing were not binding on the Court, and that all she could know for sure was that she could be sentenced up to the maximum allowed by the relevant statute:

> Now, you may have talked to your lawyer or others about what the guidelines are and how they might apply in your case. A couple of things about that, however. First of all, the guidelines haven't been calculated by the Judge yet. The Judge will do that after he receives information from the probation office about you and your offense. So any estimate you've received from anyone, including your lawyer, about how the guidelines might apply in your case, that's just their best guess, and that's not going to be binding on the Court.
>
> * * *
>
> . . . the only thing you know, standing here today, is that your sentence won't be more than the statutory maximum that I've already informed you of.

*Id.* at 8–9. Knowing this, Evans made a plea of guilty, and stated that she was making the plea freely and voluntarily, and that she had not be forced to make the plea, nor was she relying on any promises in making her plea. *Id* at 21–22.

Before sentencing, Judge Yeakel had Evans reaffirm her statements she made before Judge Pitman. Sentencing at 3–4. He also provided Evans with the range of potential punishment: up to twenty years in prison on each count, three years of supervised release, a mandatory $300 assessment, and a fine up to $250,000 or twice her gain or her victims' loss, whatever is greatest. *Id.* at 5. This fine did not include her potential restitution she could be ordered to pay to her victims. *Id.* Evans acknowledged that the District Court could impose restitution. *Id.* Evans also told the District Court that she had reviewed the plea agreement with her attorney and understood its requirements. *Id.* at 4.

It is plain from all of this that Evans's plea meets the three part test for a voluntary plea. Evans does not allege coercion, and from the transcripts, it is clear that she understood the charges and the possible consequences. In reality, it appears that Evans was in denial regarding her conduct (indeed, she appears still to be so), and that she simply did not believe she was responsible for the loss she caused her victims. Thus, despite the admonishments she received from Judge Pitman regarding the possible sentence and restitution, she chose to believe that she would not be held accountable for the over $800,000 in losses she caused her customers. Simply because she was unrealistic regarding the likely outcome of the sentencing hearing does not make her plea involuntary, and this point has no merit.

C.     **Did the Restitution Imposed Violate the Ex Post Facto Clause?**

Evans argues that the conduct resulting in her criminal charges took place between 2001 and 2005, and the District Court violated the Ex Post Facto clause when it imposed a sentence that was not in the United States Sentencing Guidelines during that time. Presumably, Evans is arguing that the Mandatory Victim Restitution Act of 1996 ("MVRA") was improperly applied to her. It appears that Evans is arguing that the $824,000 in restitution imposed upon her was improper because it exceeded the total of the three checks involved in the counts to which she pled guilty (a total of $1,052.72). This argument is flawed, as there is no relationship between the Ex Post Facto Clause and the complaint Evans is making.

A law violates the Ex Post Facto Clause if (1) it "appl[ies] to events occurring before its enactment," and (2) it "disadvantage[s] the offender affected by it by altering the definition of criminal conduct or increasing the punishment for his crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). "[T]he ex post facto clause is not violated when a district court orders restitution under the MVRA for related but uncharged conduct that is part of a . . . scheme occurring prior to and continuing past the MVRA's effective date." *United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003). Because the MVRA was enacted before Evan's conduct, the District Court's application of the MVRA to determine Evans's restitution obligation did not violate the Ex Post Facto Clause.[5]

## IV. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that Movant Wendy Evans's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 be **DENIED**.

---

[5]To the extent Evans is complaining about being held responsible for restitution flowing from counts of the indictment to which she did not plead guilty, the Court has addressed that issue above in footnote 2.

# V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not be issued.

## VI.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 24th day of June, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE